IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TODD ASHKER,

       Plaintiff,

   v.

MATTHEW CATE, et al.,

       Defendants.

_____/

No. C 09-2948 CW

ORDER GRANTING
DEFENDANTS' MOTION
TO DISMISS AND
MOTION FOR SUMMARY
JUDGMENT

On June 30, 2009, pro se Plaintiff Todd Ashker, an inmate housed in the Secured Housing Unit (SHU) at Pelican Bay State Prison (PBSP), filed this civil rights complaint against several Defendants.  The Court, pursuant to 28 U.S.C. § 1915A, reviewed the complaint and the First Amended Complaint (1AC).  See Docket Nos. 5 and 12.  In its June 1, 2010 order reviewing the 1AC, the Court found the following causes of action to be cognizable: (1) an Eighth Amendment cause of action for deliberate indifference to serious medical needs against Defendants Dr. Michael Sayre, Family Nurse Practitioner (FNP) Sue Risenhoover, FNP Maureen McLean and Nurse James Flowers; and (2) a state law cause of action for negligence for breach of a professional duty of care against Defendants Dr. Sayre, FNP Risenhoover, FNP McLean,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Nurse Flowers, Nurse Pam Labans and Nurse R. Robinson.[1]
Defendants move to dismiss all causes of action based on the
doctrine of res judicata, move to dismiss the state causes of
action against FNP McLean and Nurses Labans and Robinson for
failure to exhaust state remedies and move for summary judgment of
all causes of action based on Plaintiff's failure to raise a
triable issue of material fact with regard to their merits.
Plaintiff has filed an opposition and Defendants have replied.
The motion was taken under submission and decided on the papers.
For the foregoing reasons, the Court grants the motion.

BACKGROUND

On October 24, 1990, Plaintiff was shot by a PBSP guard and,
as a result, sustained severe and permanently disabling injuries
to his right forearm, wrist, hands and fingers, which cause him
ongoing pain.[2]  Plaintiff has brought several lawsuits against Dr.
Sayre and other PBSP staff regarding their medical treatment of
these injuries.  The last lawsuit, Ashker v. Sayre, C 05-3759 CW,[3]
resulted in a jury verdict, on May 22, 2009, in favor of Plaintiff

_____

[1] Plaintiff identifies R. Robinson as a nurse.  Defendants do
not state that R. Robinson is not a nurse, but identify him with
the title, "Mr."  Because Defendants do not specifically state
that this Defendant is not a nurse, the Court adopts Plaintiff's
characterization of him as a nurse.

[2] Plaintiff verifies under penalty of perjury that the
allegations in his 1AC are true and correct and requests that they
be considered as evidence with his declaration.  See Ashker Dec.
at ¶ 30.  Defendants do not object to this request.  The Court
accepts the factual allegations that are within Plaintiff's
personal knowledge as admissible evidence.

[3] On June 18, 2007, Plaintiff filed a supplemental complaint
in this case.

and against Dr. Sayre on the claims that Dr. Sayre knowingly disregarded Plaintiff's serious medical needs and was negligent in his treatment of Plaintiff. See Case No. C 05-3759 CW, Docket No. 421, May 22, 2009 Jury Verdict. On June 30, 2009, approximately one month after the jury rendered its verdict in case number C 05-3759 CW, Plaintiff filed the instant action.

The following are the relevant facts in this case regarding each Defendant in the light most favorable to Plaintiff.

I. Dr. Sayre

Dr. Sayre is the PBSP Chief Medical Officer, responsible for the supervision of the PBSP medical staff, including FNP Risenhoover, who was Plaintiff's primary care provider (PCP) from March 2006 to December 19, 2008. See 1AC at ¶ 20.

On June 6, 2007, Plaintiff met with Dr. Sayre for treatment of his injured arm. Plaintiff told Dr. Sayre that he was experiencing serious arm pain and stomach issues, including chronic diarrhea which Plaintiff thought was caused by the non-steroidal anti-inflammatory drugs (NSAIDs) that FNP Risenhoover had prescribed for his pain. Plaintiff showed Dr. Sayre his forearm tendons, which Plaintiff said felt extremely tight and inflamed from use the previous day, and his wrists, which he said hurt all the time. Dr. Sayre, without carefully examining Plaintiff's forearm and wrist, stated, "Oh, that's just mild arthritis." Plaintiff also told Dr. Sayre that the pain associated with his ulna nerve felt worse and was so bad that it caused him sleep loss and that he was desperate for relief. Dr. Sayre said, "I'll look into it."

Plaintiff filed several 602 appeals, in which he complained that he was being prescribed the wrong pain medication and requested to be seen by a qualified specialist.  On September 13, 2007, Dr. Sayre denied Plaintiff's 602 appeal number 2007-11142; on December 27, 2007, he denied Plaintiff's 602 appeal number 2007-11497; on December 2, 2008, he granted Plaintiff's request in 602 appeal number 18-08-12852 for an examination by an independent specialist to determine the proper level of pain medication and denied Plaintiff's request for an immediate change in his pain medication.  Although Dr. Sayre granted Plaintiff's request for an independent medical examination, Plaintiff was not examined by an independent physician or specialist.[4]

## II. FNP Risenhoover

On June 20, 2007, Plaintiff saw FNP Risenhoover for treatment of his injured arm, hand and wrist.  He showed her his hand and fingers which were swollen and purple in color.  He also told her he had severe stabbing pain in his forearm and his nerve pain was worse.  FNP Risenhoover prescribed NSAIDs, tylenol and elavil for the pain.  Except for the elavil, these medications had been prescribed for Plaintiff in the past and Plaintiff informed FNP Risenhoover that they did not alleviate his arm and wrist pain and caused him stomach pain.  Plaintiff told FNP Risenhoover that, out of desperation, he would try the elavil, even though in the past he had experienced bad side effects from it.  After Plaintiff

---

[4] On June 18, 2010, pursuant to the Court's Order for Specific Performance in case number C 05-3759 CW, Plaintiff was seen by an independent pain consultant.  See Case No. C 05-2759 CW, Docket No. 501.

**United States District Court**
For the Northern District of California

began taking the elavil, he started to experience blurred vision and agitation.  On July 19, 2007, Plaintiff was escorted to the clinic for his scheduled thirty-day follow-up visit with FNP Risenhoover, but he was taken back to his cell and denied this visit because custody staff observed that he appeared to be very agitated.  The elavil prescription expired on July 20, 2007 and he was not seen again by FNP Risenhoover until August 14, 2007. Therefore, from July 20 to August 14, 2007, Plaintiff was without any medication for his nerve pain.

On August 2, 2007, Plaintiff was examined by a gastroenterologist, Dr. Martinelli,[5] who recommended that Plaintiff's medication regimen be changed from the NSAIDs to codeine-tylenol no. 3 to control pain and to relieve stomach problems.  On August 14, 2007, Plaintiff saw FNP Risenhoover and explained Dr. Martinelli's recommendation to change his pain medication.  FNP Risenhoover said that she had consulted with Dr. Sayre and that they would not follow Dr. Martinelli's recommendation.  FNP Risenhoover maintained Plaintiff on the same pain medication regimen.  On August 23, 2007, Dr. Martinelli told Plaintiff that his recommendation to switch to codeine-tylenol was not followed because of Plaintiff's history of drug abuse.

On August 30, 2007, Plaintiff was interviewed by FNP Risenhoover regarding Plaintiff's 602 Appeal number 07-11142.  FNP Risenhoover said she'd been ordered to prescribe codeine-tylenol no. 3 as Plaintiff's pain medication, even though she believed Plaintiff did not need it.  She also ordered ibuprofen, regular

---

[5] The parties do not provide Dr. Martinelli's first name.

**United States District Court**
For the Northern District of California

tylenol, elavil and zantac.  Plaintiff's thirty-day follow-up visit with FNP Risenhoover "was supposed to happen on September 29, 2007."  1AC ¶ 57.  However, she did not see him until October 29, 2007, during which time he suffered unnecessary pain and discomfort because the pain medication was only effective for six hours and caused nausea, stomach cramps and lethargy.  The side effects from the elavil became worse and the zantac and ibuprofen made his diarrhea and stomach pain worse.  On October 29, 2007, Plaintiff saw FNP Risenhoover and she discontinued all medication except for 400 milligrams of ibuprofen and almacone antacid chewable tablets for stomach pain.

On December 20, 2007, at his next appointment with FNP Risenhoover, she prescribed 400 milligrams of ibuprofen per day, 1300 milligrams of tylenol per day and one almacone tablet every other day.  These medications continued to be ineffective in alleviating his hand and wrist pain and the stomach pain caused by the medication.

Between January 3, 2008 and December 19, 2008, Plaintiff saw FNP Risenhoover eight or nine times.  On each occasion, she told him that she would only prescribe ibuprofen and tylenol for his pain.  Plaintiff repeatedly informed FNP Risenhoover that these medications did not relieve his pain and caused him to have severe stomach problems.  FNP Risenhoover never conducted a careful examination of Plaintiff's arm or hand and, on a few occasions, she falsely entered in Plaintiff's medical record that she had examined his arm.  She falsely wrote in Plaintiff's medical record that he was not in pain and that, though his right grip strength

was mildly weaker than his left, his right finger and wrist range of motion was normal.  1AC at ¶ 84.

On December 20, 2008, Plaintiff was examined by Dr. Carl Shin, the pain specialist who testified for Defendants in case no. C 05-3759 CW.  Dr. Shin noted that the range of motion of Plaintiff's right arm, hand, fingers and wrist were abnormal and his grip strength was very weak.  He also noted that Plaintiff's arm brace did not fit correctly and was not adequate for his needs.  Dr. Shin recommended that Plaintiff be fitted for a proper arm brace, that he see a wrist specialist and that his pain medication be changed to tramadol.  1AC at ¶ 93.  Dr. Sayre and FNP Risenhoover did not follow any of Dr. Shin's recommendations.

On March 26, 2009, Plaintiff met with Dr. Claire Williams, a PBSP doctor.  Dr. Williams carefully examined Plaintiff's right arm and hand, noting weakness and limited range of motion.  Dr. Williams prescribed codeine-tylenol no. 3, twice per day, 650 milligrams of regular tylenol every six hours, zantac twice per day and sucralfate four times a day for stomach discomfort. Plaintiff's symptoms improved with this combination of medications.  However, as of May, 2009, the medications had lost their effectiveness.  Plaintiff submitted several requests to see a doctor, and was told "he was on the list."

III. Nurse Flowers

Nurse Flowers acted as a "gatekeeper" between Plaintiff and FNP Risenhoover.  On at least nine occasions Plaintiff made requests to Nurse Flowers to see FNP Risenhoover for treatment of his pain and stomach symptoms.  Nurse Flowers classified

Plaintiff's symptoms and complaints as "routine," which caused
long delays in Plaintiff being treated by FNP Risenhoover.

IV. Family Nurse Practitioner McLean

As PBSP Health Care Manager, FNP McLean reviewed the care
inmates received, and supervised, trained and evaluated other PBSP
medical staff.  Plaintiff's Ex. G, Health Care Manager Duty
Statement.  FNP McLean knew about Plaintiff's serious medical
problem and the inadequacy of the medication FNP Risenhoover was
prescribing for him.  On October 17, 2007, FNP McLean reviewed
Plaintiff's 602 appeal number 07-11142 and affirmed Dr. Sayre's
response, which indicated that FNP Risenhoover's medical treatment
of Plaintiff was appropriate and there was no justification for an
investigation.  On January 24, 2008, FNP McLean affirmed Dr.
Sayre's determination of Plaintiff's 602 appeal number 07-11497.
On January 8, 2009, FNP McLean adopted Dr. Sayre's determination
of Plaintiff's 602 appeal number 18-08-12852 which granted
Plaintiff's request to be seen by an independent doctor and denied
his request to have an immediate change in his medication.[6]

V. Nurse Labans and Nurse Robinson

Nurses Labans and Robinson knew that information in
Plaintiff's medical record that he had abused drugs was false, but
they refused Plaintiff's requests to change it.  On March 19,
2008, Nurses Labans and Robinson denied Plaintiff's January 14,
2008 602 appeal number 08-11738.

---

[6] In its order screening the complaint, the Court found that
a different claim against FNP McLean, based on her denial of
Plaintiff's 602 appeal concerning an allegedly false entry in his
medical record, did not state a cognizable claim.

**United States District Court**
For the Northern District of California

DISCUSSION

I. Motion to Dismiss

A. Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal

United States District Court
For the Northern District of California

"without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

B. Res Judicata

Defendants argue that, because there was a final judgment in case no. C 05-3759 CW, and the other elements of res judicata are met, Plaintiff's causes of action against Dr. Sayre are barred.

"Res judicata bars a suit when 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" ProShipLine Inc. v. Aspen Infrastructures Ltd., 594 F.3d 681, 688 (9th Cir. 2010). Res judicata applies "when there is '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.'" Id.

Plaintiff does not dispute that there was a final judgment on the merits in case number C 05-3759 CW, or that he and Dr. Sayre, were parties in both lawsuits. Instead, he argues that there is no identity of claims because the events in this lawsuit occurred after June 18, 2007, when he filed a supplemental complaint in the first lawsuit.

To determine whether an identity of claims exists, a court considers four factors: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two

**United States District Court**
For the Northern District of California

suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." Id. (citation omitted; emphasis in original).  "Whether two suits arise out of the 'same transactional nucleus' depends upon 'whether they are related to the same set of facts and whether they could conveniently be tried together.'" Id. (quoting W. Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992)) (emphasis in original).  However, the rule that a judgment is conclusive as to every matter that could have been asserted does not apply to new claims that arise while the first action was being litigated. Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 750 F.2d 731, 739 (9th Cir. 1984).  Thus, res judicata does not bar litigation of claims based on events that occurred after the filing of the complaint in the first lawsuit.  Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2nd Cir. 2000) (cited in Adams v. California Dep't of Health Servs., 487 F.3d 684, 693 (9th Cir. 2007)).  However, if the parties litigated claims arising from events that occurred after the filing of the complaint or the supplemental complaint, then the res judicata bar would encompass them.  Los Angeles Branch NAACP, 750 F.2d at 740.

There is no dispute that the claims in both cases involved infringement of the same right: Plaintiff's constitutional right to receive adequate medical treatment for his serious medical condition and his state law right to receive an acceptable level of medical care.  There is no dispute that the claims in both

**United States District Court**
For the Northern District of California

actions arise out of the same transactional nucleus of facts, that is, Plaintiff's medical treatment and the medication prescribed for the pain in his injured arm and wrist.   In response to Plaintiff's argument that his claims arose after he filed a supplemental complaint in his previous case, Defendants cite evidence of Plaintiff's medical condition after the date of his supplemental complaint that Plaintiff presented to the jury at his trial.

The following post-June 2007 evidence was presented in case number C 05-3795 CW.

On May 12, 2009, toward the end of his trial, Plaintiff testified as follows:

> Ever since I was taken off tramadol on 9/27/06, I have been in a lot more pain and discomfort, whereas before being taken off tramadol, my pain level was generally around a three. . . . Since going back to NSAIDs and tylenol, my pain level has been around a seven depending on use.   All writing is painful for me in the wrist joint, fingers, inner forearm, . . . This pain effects [sic] my ability to sleep.   And it's affected my ability to concentrate and focus on tasks, like drafting legal documents and writing letters.   I dread having to do any writing, but still must generally do some writing every day regarding legal issues, personal issues, maintaining contact with wife, family, friends, correspondence courses, etc.
>
> [A]ll writing is a very slow, painful process for me and the 200 milligrams of ibuprofen and tylenol 13 milligrams per day does not work for this pain. . . . And I have had to take a lot more around 1200 milligrams of ibuprofen and 1300 milligrams of Tylenol per day for the past -- between I would say October and April of this year in order to do the legal writing that I have had to do and get a bit more sleep including an unbelievable amount to prepare for this trial right here.

12

**United States District Court**
For the Northern District of California

> At the expense of my stomach, which has felt a lot worse,
> taking superfed (phonetic) a day.  Superfed is a medication
> that coats your stomach.  It's given -- I am taking four a
> day of that now.

Skilling Dec., C 05-3795 CW Trial Transcript (TR) May 12, 2009 at
387-90.

Plaintiff also testified about his March 26, 2009 examination
by Dr. Williams, describing the medications Dr. Williams
prescribed for him and how the medications affected his arm and
wrist pain and his stomach.  TR at 390-91.  In questioning Dr.
Sayre, Plaintiff stated, "Dr. Sayre, isn't it true that during the
time -- at the time period in question '06, '07, '08, I had not
had any nerve conduction tests done since 2001?"  TR at 884.  Dr.
Sayre responded, "If you say so."  TR at 884.  Also, at his trial,
Plaintiff questioned Dr. Cory Weinstein, his expert witness, who
had examined Plaintiff several time during the years 2000 through
2009.  At the trial, Dr. Weinstein testified about his medical
findings regarding Plaintiff's arm and his recommended treatment
plan.  TR at 459-528.  Dr. Carl Shin, Defendant's medical expert,
examined Plaintiff in December 2008.  Dr. Shin was questioned on
direct and cross-examination by Plaintiff about his medical
findings regarding Plaintiff's condition in 2008.  TR at 932-1014.

This testimony placed in issue Plaintiff's medical condition
and Dr. Sayre's conduct up to the date of the trial.

Further, at the 2009 trial, the jury instruction on
compensatory damages told the jury to consider Plaintiff's "loss
of enjoyment of life experienced and which with reasonable

United States District Court
For the Northern District of California

probability will be experienced in the future," and Plaintiff's "physical pain and suffering experienced and which with reasonable probability will be experienced in the future."  Case C 05-3759 CW, Docket No. 416, Final Jury Instructions at 8.

The jury was not instructed to limit its consideration of the evidence to those events which occurred prior to June 2007.  Thus, the jury considered evidence of Plaintiff's medical condition through May 12, 2009, the date of his trial testimony, and considered Plaintiff's future physical pain and suffering and loss of enjoyment of life as damages beyond that date.

In this case, Plaintiff's claims against Dr. Sayre arise from events that took place from June 2007 through December 2008, before the jury rendered its verdict in case number C 05-3759 CW. Therefore, all of these claims and the resulting damages were considered by the jury and included in its verdict.  Thus, there is an identity of claims in the two cases.

Plaintiff argues that res judicata does not apply because his present claims against Dr. Sayre were not administratively exhausted during the pendency of his previous case and, thus, he could not have asserted them at that time.  Although administrative exhaustion is a requirement before a prisoner's civil rights claim can be filed in federal court, the jury would not have known about this requirement.  Based on the evidence presented at trial and the jury instructions, the jury was deciding Plaintiff's claims through May 2009 and damages based

upon those claims.  Thus, res judicata applies even if Plaintiff's claims against Dr. Sayre were unexhausted at the time of the trial.

Although Plaintiff does not dispute that there is privity between Dr. Sayre and the other Defendants in this case, the Court examines whether privity exists.

Privity exists among parties when there is a sufficient commonality of interest such that they are so closely aligned in interest that one is the virtual representative of the other. Nordhorn v Ladish Co., Inc., 9 F.3d 1402, 1405 (9th Cir. 1993). Characteristics demonstrating such representation include a close relationship, an identity of relevant interests, substantial participation in the prior lawsuit and tactical maneuvering that would benefit both parties.  Irwin v. Mascott, 370 F.3d 924, 930 (9th Cir. 2004).

In regard to FNP Risenhoover, Plaintiff acknowledges that the claims against her and Dr. Sayre are "intertwined" because, "although FNP Risenhoover was Ashker's primary care provider from 2006-2008, she did so under the direct supervision, guidance, and direction of Dr. Sayre."  Pl.'s Opp. at 10; Pl.'s Ex. G, Duties of PBSP Nurse Practitioner.  FNP Risenhoover was a defendant in the prior lawsuit; Plaintiff voluntarily dismissed with prejudice all claims against her on February 25, 2009, before his case against Dr. Sayre went to trial.  Based upon Plaintiff's evidence and acknowledgment that the claims against FNP Risenhoover are

15

intertwined with those against Dr. Sayre, and that there is a close relationship and an identity of interests between them, there is privity between them such that the res judicata bar that applies to Dr. Sayre's claims also bars the claims against FNP Risenhoover.

The remaining Defendants argue that Dr. Sayre represented their interests in the previous litigation because he was sued in his role as PBSP Chief Medical Officer and, even though he was the only Defendant left at trial, the trial included evidence of Plaintiff's treatment by all PBSP medical providers.  Because, as discussed below, the Court rules in favor of these Defendants for other reasons, it does not address whether there is privity between them and Dr. Sayre.

C. Lack of Exhaustion of State Law Causes of Action

Defendants argue that the state law causes of action against FNP McLean and Nurses Labans and Robinson should be dismissed as unexhausted because Plaintiff failed to submit claims against them to the California Victim Compensation and Government Claims Board within six months of the incidents giving rise to the claims.

Pursuant to the California Tort Claims Act (CTCA), Cal. Gov't Code §§ 900 et seq., a personal injury claim against a public employee must be filed with the Board within six months after the date of the event that gave rise to the claim.  Cal. Gov't Code § 911.2(a).  Compliance with the CTCA filing requirement is mandatory; failure to file a claim within the requisite time

period is a bar to future tort suits.  Hernandez v. McClanahan, 996 F. Supp. 975, 977 (N.D. Cal. 1998).  A claim is deemed received by the Board when the claimant deposits it in the mail. Cal. Gov't Code § 915.2.

Plaintiff's proof of service for his claim to the Board indicates that, on October 9, 2008, he gave it to prison officials to be mailed.  Therefore, the claim is deemed to be filed on October 9, 2008.  Plaintiff's claim to the Board was brought against all named Defendants in this case.  Roman Dec., Ex. B.  On November 24, 2008, the Board sent Plaintiff a letter informing him that his claim was "being accepted only to the extent it asserts allegations that arise from facts or events that occurred during the six months prior to the date it was presented."  Id. at 1.  In the same letter, the Board indicated that, because of the complexity of Plaintiff's claims, it believed that the court system was the appropriate forum for resolving them.  Id.  On December 26, 2008, the Board sent Plaintiff a letter informing him that his claim had been rejected on December 18, 2008.

Because Plaintiff filed his claim on October 9, 2008, it exhausts only causes of action based on facts or events which occurred up to six months previous to this date, that is, on or after April 9, 2008.

1. FNP McLean

Plaintiff's state law claim against FNP McLean is based on the allegations that, on October 17, 2007, January 24, 2008 and

April 8, 2008, she affirmed Dr. Sayre's decisions regarding three 602 appeals that Plaintiff had filed.  1AC at ¶¶ 57, 77.  Because these events occurred before April 9, 2008, Plaintiff's state law causes of action against FNP McLean based upon them is unexhausted.

> ### 2. Nurse Labans

Plaintiff's state law claim against Nurse Labans is based upon the allegations that, on March 19, 2008, she denied his 602 appeal and told him that "the drug abuse history" notation in his medical record was based on his use of tramadol for many years and that there would be no change in this notation in his medical record.  1AC at ¶¶ 73-75.  Because this occurred before April 9, 2008, this cause of action is unexhausted.

> ### 3. Nurse Robinson

Plaintiff's only allegation against Nurse Robinson is that, on March 19, 2008, he, along with Nurse Labans, denied one of Plaintiff's 602 appeals which requested that the "drug abuse" notation in Plaintiff's medical record be expunged.  Because this occurred before April 9, 2008, the cause of action is unexhausted.

Plaintiff argues that these causes of action are exhausted because, in his claim to the Board, he notified it that his claims constituted continuing violations.  He also argues that the Board failed to inform him that his claim was late and, if he had known this, he would have taken corrective action.

The continuing violation theory generally is applied to a continuing policy and practice on an organization-wide basis. Green v. Los Angeles County Superintendent of Schs., 883 F.2d 1472, 1480 (9th Cir. 1989). The plaintiff must show that the policy or practice operated at least in part within the limitations period. Id. A plaintiff may also show a continuing violation by alleging a series of related acts, one or more of which falls within the limitations period. Id. However, a continuing impact from past violations does not give rise to a continuing violation. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). In other words, when a plaintiff learns of the allegedly wrongful act, he or she is on notice that his or her rights have been violated and the statute of limitations is deemed to have commenced at that time. Id. at 1014.

Plaintiff cannot survive a timeliness challenge by claiming a continuing violation on the part of FNP McLean, Nurse Labans or Nurse Robinson because all of their conduct at issue occurred outside of the limitations period.

Furthermore, in its November 24, 2008 letter to Plaintiff, the Board did inform him that his claim was only accepted for events that occurred within the six months prior to the date it was presented to the Board. Therefore, Plaintiff was on notice that any claim based on events before the six month cutoff was not accepted by the Board and was not exhausted.

**United States District Court**
For the Northern District of California

Defendants' motion to dismiss the state law causes of action against FNP McLean, Nurse Labans and Nurse Robinson for lack of exhaustion is granted.

II. Summary Judgment

A. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which

facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods.  Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

**United States District Court**
For the Northern District of California

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  <u>Nissan</u>, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  <u>Id.</u>

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. <u>Id.</u>  This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  <u>Id.</u> at 1107.

B. Deliberate Indifference to Serious Medical Needs

Plaintiff's Eighth Amendment cause of action is based on the fact that he has the serious medical condition of a permanently disabled right arm and wrist which causes him constant pain.  He claims that Defendants have treated him with deliberate indifference by not providing him with the proper pain medication.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993).  Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136

(9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  Id.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer, 511 U.S. at 837.  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  Id.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm.  McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Neither a finding that a defendant's actions are egregious nor that they resulted in significant injury to a prisoner is required to establish a violation of the prisoner's federal constitutional rights.  McGuckin, 974 F.2d at 1060, 1061. Deliberate indifference may be shown when prison officials deny, delay or intentionally interfere with medical treatment, or in the way in which prison officials provide medical care.  Id. at 1062

(delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Defendants concede, for the purposes of this motion, that the condition of Plaintiff's arm constitutes a serious medical need. Therefore, whether Plaintiff has raised a triable issue of fact to preclude summary judgment on this cause of action depends on the evidence of each Defendant's response to that need.

Because Plaintiff's state law negligence cause of action is based on the same allegations as his Eighth Amendment cause of action, the Court reviews them together.

C. Dr. Sayre and FNP Risenhoover

As discussed above, the causes of action against Dr. Sayre and FNP Risenhoover are barred by res judicata. Thus, there is no

need to address whether they are entitled to summary judgment on the causes of action against them.

D. FNP McLean

The evidence against FNP McLean is that she denied several of Plaintiff's 602 appeals.  FNP McLean's denial of Plaintiff's 602 appeals may have delayed a change in Plaintiff's pain medication. However, this alone is not sufficient to amount to evidence that she was deliberately indifferent to Plaintiff's serious medical need.

Plaintiff also submits evidence that, on January 8, 2009, FNP McLean affirmed Dr. Sayre's decision to grant in part Plaintiff's 602 appeal.  The decision denied Plaintiff's request to have his medication changed, but granted his request to be examined by an independent doctor.  Although Plaintiff states that he was never seen by an independent doctor, he was subsequently examined by Dr. Williams, a PBSP staff doctor, who changed Plaintiff's pain medication to his satisfaction.  FNP McLean's January 8, 2009 affirmation of Dr. Sayre's decision does not demonstrate deliberate indifference to Plaintiff's medical needs.

Plaintiff also argues that FNP McLean is liable based upon her supervisory duties.  However, a supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor may also

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

Plaintiff does not submit evidence that FNP McLean participated in or directed any constitutional violations by her subordinates or that she implemented a policy that was the moving force behind any constitutional violations.  Therefore, Defendants' motion for summary judgment of the causes of action against FNP McLean is granted.

E. Nurse Flowers

The evidence against Nurse Flowers is that, on many occasions, he classified Plaintiff's complaints of arm, wrist and stomach pain as "routine" and as a result Plaintiff experienced long delays in obtaining appointments to see FNP Risenhoover. However, the evidence shows that, over the period of time that FNP Risenhoover was Plaintiff's PCP, he saw her many times.  That Nurse Flowers characterized Plaintiff's complaints as "routine" does not amount to evidence of deliberate indifference or negligence.  Therefore, summary judgment is granted in favor of Nurse Flowers on Plaintiff's Eighth Amendment and negligence causes of action.

United States District Court
For the Northern District of California

F. Qualified Immunity

Defendants argue that the doctrine of qualified immunity shields them from liability on Plaintiff's causes of action.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A defendant may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 205 (2001). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Where there is no clearly established law that certain conduct constitutes a constitutional violation, the defendant cannot be on notice that such conduct is unlawful. Rodis v. City & County of San Francisco, 558 F.3d 964, 970-71 (9th Cir. 2009). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

**United States District Court**
For the Northern District of California

defendant that his conduct was unlawful in the situation he confronted.  <u>Saucier</u>, 533 U.S. at 202.

On these facts, viewed in the light most favorable to Plaintiff, Defendants FNP McLean and Nurse Flowers[7] prevail as a matter of law on their qualified immunity defense because the Court has found no Eighth Amendment violation.  However, even if a constitutional violation had occurred with respect to Plaintiff's Eighth Amendment cause of action, in light of clearly established principles at the time of the incident, FNP McLean and Nurse Flowers could have reasonably believed that their respective behavior, reviewing Plaintiff's 602 appeals and characterizing Plaintiff's symptoms as routine, were lawful.

CONCLUSION

Based upon the foregoing, Plaintiff's causes of action against Dr. Sayre and FNP Risenhoover are barred by res judicata; Plaintiff's state law causes of action against FNP McLean and Nurses Labans and Robinson are dismissed for failure to exhaust state remedies; summary judgment is granted in favor of FNP McLean on the Eighth Amendment cause of action; and summary judgment is granted in favor of Nurse Flowers on the Eighth Amendment and negligence causes of action.  The clerk of the court shall enter a

---

[7] The claims against Dr. Sayre and FNP Risenhoover are barred by res judicata.  Plaintiff does not bring any constitutional claims against Nurses Labans and Robinson.

separate judgment in favor of Defendants.  All parties shall bear their own costs of litigation.

IT IS SO ORDERED.


Dated: March 30, 2012

_____
CLAUDIA WILKEN
United States District Judge